# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

_____

| | |
|---|---|
| **BILLY W. TAYLOR** | **CIVIL ACTION NO. 04-0521-M** |
| -vs- | **JUDGE DRELL** |
| **WASHINGTON MUTUAL, INC.** | **MAGISTRATE JUDGE KIRK** |

## R U L I N G

Before the Court are cross motions for summary judgment filed by defendants Washington Mutual Bank and Washington Mutual, Inc. ("Washington Mutual") (Doc. 81) and by plaintiff Billy W. Taylor (Doc. 82), covering essentially all of the claims at issue. As to both motions, we will grant in part and deny in part.

## BACKGROUND

In our June 16, 2005 ruling dismissing Taylor's state law claims for severance pay, we summarized the background of this case as follows:

> Plaintiff, Billy Taylor ("plaintiff"), a resident of Louisiana, was employed as a National Correspondent Business Director for North American Mortgage Company, a subsidiary of defendant Washington Mutual Inc.'s ("defendant") predecessor, Dime Bancorp, from December 1996 until May 15, 2002 (Doc. 5). Defendant is a corporate citizen of the state of Washington. Plaintiff and Dime Bancorp entered into a change in control agreement ( the "agreement") whereby Mr. Taylor would be paid severance benefits if he were to lose his job, or suffer a reduction in salary, after a change in control of the company (Doc. 5, Ex. B). In addition, he would be eligible for various life, health, disability and dental insurance for a certain period of time. The severance and benefits were to be paid only if the plaintiff's loss of his job or reduction in salary happened through no fault of his own.

A compensation agreement between Taylor and North American Mortgage Company contained a section devoted to a procedure for changing the plaintiff's compensation while retaining his employ with the company. This section provided that, if the plaintiff's compensation were to be unilaterally modified, plaintiff would be notified in writing 60 days before the change took effect. This agreement also specified that no modification would affect any compensation which the plaintiff had already earned but not received (Doc. 5, Ex. A).

Because the payment of severance was not automatic, the agreement set up a method of determining what benefits plaintiff would receive. In the event that a change in control or reduction in salary did occur, the agreement provided that an Umbrella Trust Committee ("committee") would have the authority to interpret its provisions. The extent of the committee's interpretive authority was provided in another document labeled an "Umbrella Trust", which was referenced in the agreement (Doc. 10, Ex. 1). The trust provided that the committee had authority to determine whether benefits were payable to a beneficiary, and if so when, and in what amounts. In the event that the plaintiff objected to that committee's determination, a trustee would have the authority to review it under a reasonableness standard. If the trustee determined that the committee's original determination was unreasonable, it could request that the committee reconsider its findings. The committee's reconsideration would be final.

Despite the compensation agreement's provisions requiring 60 day notice before a change in compensation, plaintiff was notified on January 31, 2002 that his bonus would be discontinued effective the following day. Plaintiff was subsequently notified, on March 11, 2002, that his employment would be terminated on May 15, 2002. The severance agreement's provisions provided for severance in the amount of his "annual compensation", which is defined as his annual salary plus 100% of the target bonus he was eligible to earn. Plaintiff claims that this amounted to $1,371,899. Plaintiff alleges, however, that defendant miscalculated the payments to which he was entitled, by approximately $800,000. After plaintiff's demands for the disputed amount were unsuccessful, he instituted this lawsuit. He claims this alleged miscalculation amounted to breach of contract under state law and violation of the Louisiana Wage Payment Statutes, La. R.S. 23:631 *et seq*.

Defendant moves to dismiss plaintiff's state law claims under Federal Rule of Civil Procedure 12(b)(6), claiming that the agreement constitutes a "plan" under the Employee Retirement Income Security Act of 1974 and that all of plaintiff's state law claims relate to the plan and are preempted. Plaintiff responds that his individual agreement does not constitute an ERISA plan. As the amount in controversy is in excess of

$75,000 and the parties are diverse, this court has subject matter jurisdiction over their dispute pursuant to 28 U.S.C. § 1332.

(Doc. 39, pp. 1-4). We note that Taylor actually was notified of the modification of the bonus calculation on January 17, 2002, rather than January 31, 2002.

In our June 16, 2005 judgment, we dismissed Taylor's state law claims for severance benefits, stating, "Said claim will henceforth be treated as one arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B), and the parties are directed to proceed in accordance therewith." (Doc. 40). In our October 18, 2005 ruling, we denied Washington Mutual's Rule 12(b)(2) motion to dismiss the ERISA claim. Thus, we also have jurisdiction under 28 U.S.C. § 1331.

As of Taylor's second amended complaint, filed July 17, 2006, the remaining claims are: the ERISA severance payment claim, a claim for penalties for failure to provide requested ERISA documentation, a breach of contract claim relating to the compensation agreement, a claim for penalty wages under Louisiana law, and claims for attorney's fees under Louisiana law and attorney's fees and costs under ERISA. (Doc. 60). The cross motions for summary judgment before us essentially concern all of these claims.

## ANALYSIS

### SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure mandates that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

3

moving party is entitled to judgment as a matter of law. Id. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

## ERISA SEVERANCE CLAIM

The ERISA severance claim is not subject to summary judgment because of genuine issues of material fact relating to a potential conflict on the part of the Umbrella Trust Committee, sitting as plan administrator. In Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337 (5th Cir. 2002), the Fifth Circuit explained the standard of review for ERISA plans:

> An administrator's denial of benefits under an ERISA plan is "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (citation omitted). Because the language in the Policy does not give UNUM such discretion,

>we apply the de novo standard of review.  However, UNUM's factual determinations during the course of Lain's benefit proceeding are reviewed for abuse of discretion.  Estate of Bratton v. Nat.'l Union Fire Ins. Co. of Pittsburgh, Pa., 215 F.3d 516, 522 (5th Cir.2000).  When applying the abuse of discretion standard, "we analy[ze] whether the plan administrator acted arbitrarily or capriciously."  Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 601 (5th Cir.1994) (quoting Salley v. E.I. DuPont de Nemours & Co., 966 F.2d 1011, 1014 (5th Cir.1992)).  A decision is arbitrary when made "without a rational connection between the known facts and the decision or between the found facts and the evidence."  Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich., 97 F.3d 822, 828 (5th Cir.1996).  An administrator's decision to deny benefits must be "based on evidence, even if disputable, that clearly supports the basis for its denial."  Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 299 (5th Cir.1999).  We must find that "[w]ithout some concrete evidence in the administrative record that supports the denial of the claim, ... the administrator abused its discretion."  Id. at 302 (emphasis added).
>
>A "sliding scale" is applied to the abuse of discretion standard where it is determined that the administrator has acted under a conflict of interest.  Id. at 296.  "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."  Id. at 297.  When a minimal basis for a conflict is established, we review the decision with "only a modicum less deference than we otherwise would."  Id. at 301 (emphasis added).

Id. at 342-43.

As we noted in our June 16, 2005 ruling, the Umbrella Trust Committee ("UTC") had the authority to construe the terms of the severance arrangement, i.e., the ERISA plan.[1]  Thus, absent other circumstances, the UTC's decisions, including its factual determinations, would be entitled to the normal abuse of discretion standard.  However,

---

[1] The specific language in the Umbrella Trust Agreement is as follows:

>Subject to the provisions of this Trust Agreement, the Trustee shall have the following administrative powers in its discretion: . . . (g) After an Irrevocable Election or Change in Control, to the extent so directed by the Committee, to interpret the provisions of the Covered Arrangements that govern the eligibility for, amount, form and timing of payments under the Covered Arrangements . . . .

(Amended and Restated Umbrella Trust Agreement, Exh. A(1) [manual attachment] to Defendants' Second Notice of Filing Plan and Administrative Record, Bates label WAMU 00137-00138).

**5**

Taylor alleges that the UTC acted under a conflict of interest, a characterization that Washington Mutual vehemently disputes.[2] Since a conflict of interest would impact the standard of review for the UTC's decisions, and since the standard of review, in turn, would impact our own analysis, these allegations involve material facts.

As Washington Mutual correctly notes in its memorandum in opposition to Taylor's motion for summary judgment, we may look beyond the administrative record in order to determine the conflict of interest issue, although we are limited to the administrative record for purposes of determining whether the administrator abused its discretion.  (Doc. 89-1, p. 8).  Unfortunately, the generally muddled nature of the record on this issue precludes us from determining whether or to what extent there was a conflict of interest.  Consequently, we cannot say at this time whether or to what extent the standard of review should be adjusted along the "sliding scale" and are thus unable to make the ultimate determination of whether the administrator's decision may survive the standard of review.  Because there are genuine issues of material fact, summary judgment is inappropriate as to the ERISA severance claim and will be DENIED.[3]

## ERISA DOCUMENTATION CLAIM

Taylor seeks penalties under 29 U.S.C. § 1132(c)(1) for the plan administrator's failure to provide requested documentation on the ERISA plan within 30 days, pursuant

---

[2] See, e.g., Taylor's memorandum in support of his motion for summary judgment (Doc. 82-6, pp. 20-21); Washington Mutual's memorandum in opposition (Doc. 89-1, pp. 13-15).

[3] We do not base this decision on Taylor's repeated assertions that the severance agreement at issue does not constitute an ERISA plan based on the opinion of Loretta Rust, Washington Mutual's designated representative for a Rule 30(b)(6) corporate deposition.  As we already held in our June 16, 2005 ruling and judgment, the arrangement at issue here is an ERISA plan based on its substance rather than on its form, and the opinion of one Washington Mutual employee cannot change that substance.

to 29 U.S.C. § 1024(b)(4). (Doc. 60-1, p. 5). However, certain plans are exempted from virtually all of ERISA's reporting and disclosure requirements. In particular, 29 C.F.R. § 2520.104-24 exempts "top hat" plans, i.e., those

> (1) Which are maintained by an employer primarily for the purpose of providing benefits for a select group of management or highly compensated employees, and
>
> (2) For which benefits (i) are paid as needed solely from the general assets of the employer, (ii) are provided exclusively through insurance contracts or policies, the premiums for which are paid directly by the employer from its general assets, issued by an insurance company or similar organization which is qualified to do business in any State, or (iii) both.

Id. Unfunded benefit plans such as "top hat" plans are subject to tax treatment under 26 U.S.C. § 404(a). 26 C.F.R. § 1.404(a)-1.

In our June 16, 2005 ruling and judgment, we held that the plan at issue here is an ERISA plan based on its substance rather than its form. The evidence continues to confirm that substance and points to the existence of a "top hat" plan. For instance, Loretta Rust, Washington Mutual's designated representative at a Rule 30(b)(6) deposition, stated that she does not believe the plan at issue is an ERISA plan. However, her reasons for that opinion reveal the opposite to be true:

> Q:  What is the ERISA plan – in this case, Washington Mutual has said there's an ERISA plan that governs his severance pay plan. What is the ERISA plan that we're talking about?
>
> A:  I would – again, I don't know who made the statement or what context that was made in. My understanding of the change-in-control agreements – or some of them were called employment agreements – none of them were ERISA plans. They fell outside of ERISA rules.
>
> Q:  Why is that?

> A: Because they were all for highly compensated executive officers of the company.  Also, because they were part of the trust – the trust had been funded out of general assets of the company, so the change-in-controls would fall outside of our – of the ERISA rules.
>
> Q: Okay.  And that would include Mr. Taylor's change-in-control agreement?  That wouldn't be an ERISA – that would fall outside of ERISA also?
>
> A: Yes.
>
> Q: Okay.

(Doc. 89-6, Exh. C to Washington Mutual's memorandum in opposition to Taylor's motion for summary judgment, p. 19).

> Q: Okay. What would – what would the change-in-control agreements – what part [of the trust] would that fall under?
>
> A: That was part of the executive and directors' compensation trust.
>
> Q: Okay.  And because it's for the highly compensated executives, that's why it falls outside of ERISA?
>
> A: Yes, as well as the funding is out of general assets.

(Doc. 82-2, Exh. B to Taylor's motion for summary judgment, p. 48).

As noted by Rust herself, she is not an ERISA specialist, nor is she an attorney, but she is clearly familiar with the change-in-control agreement, the Umbrella Trust, and how they work together.  Although she believes that the change-in-control agreement is not an ERISA plan, her testimony reveals the opposite: it is a "top hat" plan under ERISA regulations, 29 C.F.R. § 2520.104-24.  As a "top hat" plan, the change-in-control agreement is exempt from the ERISA reporting and disclosure requirements at issue here.  Thus, Taylor's claim for penalties for the administrator's failure to satisfy the reporting and disclosure requirements is without merit, and Washington Mutual's

8

motion for summary judgment will be GRANTED IN PART as to Taylor's claim for these penalties.

### BREACH OF CONTRACT

Taylor seeks summary judgment on his claim that Washington Mutual breached the terms of his compensation agreement. It is undisputed that "Taylor's compensation agreement specified that its terms could be changed but only by giving 60 days written notice of the change." (Doc. 82-5, Statement of Undisputed Facts; Doc. 89-2, Washington Mutual's response thereto). It is also undisputed that Washington Mutual sent Taylor a memo informing him of a change to the terms of the agreement on January 17, 2002, effective February 1, 2002, without abiding by the provision requiring 60 days notice. Technically, Washington Mutual breached the contract.

Washington Mutual argues that summary judgment is not appropriate because Taylor has failed to show any amount of actual damages. Yet it is apparent from the record that Taylor was paid less under the new bonus calculation, so there is unrebutted evidence that he suffered some actual damages during that portion of the 60-day period following the January 17, 2002 notice in which the new compensation calculation was used. Thus, summary judgment is appropriate as to the issue of liability for breach of contract, and Taylor's motion for summary judgment (Doc. 82) will be GRANTED IN PART as to that issue. However, summary judgment is DENIED as to the issue of damages relating to the breach of contract claim, and proof of the amount of actual damages, as well as any defenses thereto (including issues relating to the proper calculation of those damages), are deferred to trial on the merits.

**PENALTY WAGES UNDER LOUISIANA LAW**

Taylor asserts that he is entitled to recover penalty wages under the Louisiana Wage Payment Act ("LWPA"), La. R.S. § 23:631 et seq. (We note that these penalty wages under Louisiana law relate to pre-termination earnings under the compensation agreement, rather than post-termination entitlements under the change-in-control agreement, which would be preempted by the ERISA claim.) A Louisiana appellate court has explained the appropriate analysis as follows:

> Under the provisions of La.R.S. 23:632, to recover penalty wages, the claimant must show that "(1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand." Although equitable defenses are not expressly provided for in the statute, the Louisiana Supreme Court has interpreted the statute as a "coercive means" to compel an employer to pay an employee within the time limits set forth in La.R.S. 23:631. Accordingly, the court has held "that the penalty must be strictly construed and may yield to equitable defenses." If there is "'a good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability'", the court may refrain from imposing penalty wages upon the employer. "Reliance on an unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages." "'Where there is a bona fide dispute over the amount of wages due, courts will not consider failure to pay as arbitrary refusal and generally will refuse to award penalties.'"

Winkle v. Advance Products & Systems, Inc., 721 So. 2d 983, 990-91 (La. App. 3 Cir. 1998) (citations omitted).

In this case, there is a dispute as to whether Taylor made a sufficient demand; at the very least, there is insufficient evidence on the record that Taylor made a "demand for payment . . . where [he] was customarily paid." On this basis alone, summary judgment is inappropriate. Moreover, any potential defenses to this penalty wage claim will involve disputed factual issues, which are likewise inappropriate at the summary

judgment stage. Thus, summary judgment will be DENIED as to all claims relating to penalty wages under the LWPA, La. R.S. § 23:631 et seq.

### ATTORNEY'S FEES AND COSTS

Taylor seeks attorney's fees under the LWPA, La. R.S. § 23:632, and both attorney's fees and costs under ERISA, 29 U.S.C. § 1132(g). La. R.S. § 23:632 provides for reasonable attorney's fees "in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation." As we have not yet determined whether Taylor made a proper demand under the LWPA and have not yet determined whether the suit is well-founded,[4] summary judgment is inappropriate. Likewise, under 29 U.S.C. § 1132(g), we may award attorney's fees in our discretion, and as we have not yet decided on the ERISA severance payment claim, summary judgment is inappropriate. Thus, Taylor's motion for summary judgment will be DENIED IN PART as to attorney's fees and costs.

### CONCLUSION

For the foregoing reasons,

(1) Washington Mutual's motion for summary judgment (Doc. 81) will be GRANTED IN PART with respect to Taylor's claim for penalties for the administrator's failure to satisfy ERISA's reporting and disclosure requirements;

---

[4] "Jurisprudence indicates a suit is well-founded where the plaintiff has received judgment." Winkle v. Advance Products & Systems, Inc., 721 So. 2d 983, 992 (La. App. 3 Cir. 1998) (citing Beard v. Summit Institute for Pulmonary Medicine & Rehabilitation, Inc., 707 So.2d 1233 (La. 1998) and Hebert v. Insurance Center, Inc., 706 So.2d 1007 (La. App. 3 Cir. 1998)).

(2)   Taylor's motion for summary judgment (Doc. 82) will be GRANTED IN PART with respect to the issue of liability for Taylor's breach of contract claim relating to the compensation agreement and DENIED IN PART with respect to the issue of damages; and

(3)   for all other issues, the cross motions for summary judgment (Docs. 81 and 82) will be DENIED IN PART.

SIGNED on this 28th day of November, 2007, at Alexandria, Louisiana.

                                                      Dee D. Drell
                                                      United States District Judge