RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK

DATE _7_/_1_/_11_

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| BILLY W. TAYLOR | CIVIL ACTION NO. 04-521-M |
| -vs- | JUDGE DRELL |
| WASHINGTON MUTUAL, INC. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING AND ORDER

The parties have submitted separate plans of work (Docs. 206, 207) to structure our reconsideration of certain items reopened from the Ruling and Judgment issued in this case on January 12, 2011 (Docs. 164, 165; amended Docs. 177, 178). For the reasons given below, Defendant's plan (Doc. 207) is REJECTED and Plaintiff's plan (Doc. 206) is ADOPTED, consistent with the following guidance:

In April 2010, Defendant Federal Deposit Insurance Corporation ("the FDIC") and Plaintiff Billy W. Taylor ("Mr. Taylor") voluntarily agreed to try this suit on jointly submitted evidence and briefs. All filings were submitted by the end of June 2010. In January 2011, we issued our decision, finding for Plaintiff and rendering judgment against the FDIC.[1] (Docs. 164, 165). On February 28, 2011, we filed an amended ruling and judgment clarifying that our award of "interest" included "pre-judgment interest," and otherwise leaving the judgment undisturbed. (Docs. 177, 178).

Thereafter, the FDIC filed a motion to reconsider the judgment under Federal Rules of Civil

---

[1] The FDIC is defendant as the successor to Mr. Taylor's now insolvent former employer, Washington Mutual Bank. Judgment was also issued against it and Washington Mutual, Inc., as addressed below.

Procedure (FRCP) 59 and 60.[2] (Doc. 180).  It sought reconsideration of two specific issues: (1) that, under ERISA, the severance pay award should only have been rendered against "the Plan" and its present owner as separate defendant(s), and not against the FDIC; and (2) that Plaintiff should not have been awarded certain attorney fees, because of the FDIC's immunity or exemption from such an award under, inter alia, the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) and the Federal Deposit Insurance Corporation Improvement Act (FDICIA).

The former point was not presented in the original trial briefs.  Indeed, as Plaintiff points out, the FDIC had previously represented to both this Court and Plaintiff that it was the proper party to this claim, and that the other entity it now contends should be added as a party "would not be a proper party defendant in this matter." (e.g., Doc. 206-1, Exh. 1).  Nonetheless, this point of ERISA law has now been raised through the motion to reconsider and it is appropriate to resolve the issue correctly.  Plaintiff does not object to this or these additions.

The latter point was presented in the trial briefs, but it was given short shrift, literally only seven short and simple paragraphs in Defendant's original trial brief (Doc. 160, p. 26) and a passing mention in his response (Doc. 162).  We treated it similarly in our ruling, in two paragraphs with minimal analysis.  (Doc. 164, p. 18).  Consequently, the limits of the FDIC's liability under the FIRREA and the FDICIA was not adequately presented or briefed, nor was it a topic with which we were initially familiar.  The FDIC's much more comprehensive discussion of this topic in its reconsideration memorandum convinced us that there _may_ have been an "oversight" in our analysis.

---

[2]  Separately, Washington Mutual, Inc. ("WMI") filed an unopposed motion to alter the judgment, to delete references to it because it remains in bankruptcy and the accompanying stay as to proceedings against it has not been lifted.  (Doc. 186).  This motion was granted.  WMI was not mentioned in the ruling, and its inclusion in the judgment was a "misnomer."  FRCP 60(a).  Specifically, it resulted from a clerk's copying the language from the Rule 68 Offer of Judgment that the parties submitted with their trial briefs, but which had been drafted before WMI entered bankruptcy.  This correction does not affect the present proceedings.  See _Wedgeworth v. Fibreboard Corp._, 706 F.2d 541, 548 (5th Cir. 1983).

FRCP 60(a).

These were the reasons we granted the FDIC's motion to reconsider. These two topics were the extent of the FDIC's motion. (Doc. 180). Subsequently, we conducted a conference call with counsel, (Doc. 203), and those were the only two issues raised.

It is thus to our surprise that the FDIC submits its present "Plan of Action . . . organized around the following questions:

> 1. What are the governing documents of Dime, Inc.'s Change in Control Plan ("Plan")?
> 2. Does Taylor have an ERISA claim for benefits from the Plan?
> 3. Should this Court dismiss the FDIC-R as a party?
> 4. In any event, is the FDIC-R liable for attorney fees?
> 5. In any event, is the FDIC-R liable for prejudgment interest?
> 6. What is the effect of the current status of WMB, WMI and the Umbrella Trust on Taylor's ERISA claim?
> 7. Is there a right, here, without a remedy?
> 8. Should Taylor attempt to join JPMorgan Chase in the case sub jure?
> 9. Should the parties reopen discovery?
> 10. What does Defendant FDIC-R propose as a Plan of Action?"

(Doc. 207, pp. 1-2). Nowhere in the FDIC's "plan" do we find any type of action items, dates, or proposed next steps. Instead, each of the above questions is accompanied (only) by extensive argument on the merits. Either the FDIC's attorneys do not understand the development of a plan of work / scheduling order, or they have attempted to file a defective motion to dismiss or for summary judgment. Either way, their submission is useless.

A plan of work is supposed to give the attorneys the opportunity to participate in a schedule for resolving a case, not solve it on the spot. The FDIC apparently thinks that this usual manner of managing a case should not apply here because one of its claims is that it should be dismissed as a party. It would be understandable, though still impolitic, if a party at the 12(b) stage took this position. We are less sympathetic to a defendant who, as here, only makes this demand post-trial,

and then for the first time. Accordingly, we will insist that the usual manner of managing a case – with the parties conducting (limited) discovery and submitting briefs on the open issues, with a decision to follow – is the proper procedure.

In addition, we find that the FDIC's list of issues is inappropriate, for it goes far beyond the scope of reconsideration previously requested. The FDIC obviously wants to retry the entire case on the merits. A motion for reconsideration gives a party no such right, and none was granted here.

More specifically, as noted, the FDIC claims that it is not a proper Defendant and that "this Court should dismiss [it] as a party." This is a remarkable assertion, considering that (i) the FDIC does not contest that it, as receiver for Plaintiff's former employer Washington Mutual Bank ("WMB"), is the appropriate party to Plaintiff's claim for unpaid compensation, only whether it is liable for Plaintiff's claim for additional severance; and (ii) **the trial in this case has already occurred, and at trial, the FDIC never asserted that it was not a proper defendant.** Indeed, as part of its trial submissions it agreed to settle part of Plaintiff's claim for unpaid bonus compensation, and to pay it with any other amount awarded on the remainder of Plaintiff's claims in "one final judgment." (Doc. 161, p. 11; p. 11, fn. 5). Likewise, though it now claims to have no interest in the plan, at trial it vigorously contested the issue of Mr. Taylor's rights under the plan, not even mentioning in its original trial brief that its ownership of the plan was disputed.[3]

---

[3]     In addition, the ERISA plan at issue here is a so-called "top hat" plan, one which may initially not be fully funded, and for whose unpaid claims the owner remains liable. So, the mere fact that judgment should have been rendered against the plan and not the FDIC does not necessarily mean that the FDIC is not a proper defendant, or would not otherwise be liable for this judgment.

        The FDIC now claims, in addition to this point, that it is not even the owner of the plan. As noted, this possibility was not even raised in the FDIC's original trial brief. It noted in its response brief that ownership of the plan was the topic of litigation, though then only as a reason why it should not be liable for Mr. Taylor's attorney fees, not as a basis for being free from all plan liability, much less dismissed as to the unrelated, non-ERISA claims. Finally, we understand that clarification of the FDIC's non-ownership of the plan is a recent, development post-trial. This makes the FDIC's indignation at being before us to explain why it should not be liable for a claim that it voluntarily submitted to trial all the more tiresome, and its continuing liability for Plaintiff's unpaid severance and / or attorney fees – though not our ruling as to the existence of that liability under the plan – as current and / or former owner of the

Similarly, the FDIC questions "[w]hat are the governing documents of Dime, Inc.'s Change in Control Plan," and it attempts to introduce entirely new evidence and arguments on this issue, claiming that the plan was not governed by the agreements previously submitted to the Court but by an entirely new document it now seeks to present. As above, this issue was vigorously argued and decided at trial, and is not open for reconsideration. The FDIC agreed to try the case on the evidence it submitted. At trial it represented to the Court that it had introduced all of the relevant agreements and evidence, and it argued zealously – for the majority of both of its trial briefs – for its interpretation of these documents. It did not achieve the result it desired, but to seek to introduce and argue from different documents now so plainly violates every rule and spirit of fair litigation as to be reprehensible. Reconsideration of all of the FDIC's issues would demand retrial of the entire case, and that is not what the FDIC requested in its motion for reconsideration, nor what we granted in our order. Accordingly, the FDIC's characterization of the issues before us, and its attempt to reopen various previously decided issues (and introduce new evidence on the merits), is rejected.

In this regard, we ruled against the FDIC, so we understand why it would like a do-over, to take another bite of the apple. More concretely, it is our understanding that the FDIC has terminated the attorneys who handled this matter at trial, and that attorneys from the FDIC's main office are now much more involved in this case. Likewise, the FDIC's new attorneys pleaded with us that "shortly after WMB failed . . . [the FDIC] began substituting into literally hundreds of litigation matters," (Doc. 180-1, p. 9), the implication being that it would have handled this case differently – including presumably introducing some of this evidence and making certain of these arguments – had it reviewed the case more carefully from the outset. We are not insensitive to these difficulties, but the time to raise them was before or during trial, not after. The FDIC is a federal agency with its

---

plan an open issue here ripe for further adjudication.

own staff of experienced and sophisticated attorneys, and it presents no excuse for the neglect it now implicitly alleges[4] that is remotely cognizable as a reason to retry a previously decided case.

On this point, and for the record, we note that the FDIC was under no time pressure in this matter. When WMB announced its insolvency, we stayed the case so the FDIC could process it. Proceedings only resumed once the FDIC informed us that it was ready. Additionally, in this time Plaintiff specifically raised many of the issues the FDIC here seeks to raise, including whether the FDIC was the appropriate defendant to try the case following its takeover of WMB; whether it wished to proceed directly to trial or revisit certain preliminary matters; and "the current status of the trust," and whether the FDIC wished to add additional parties who could have an interest in it. (E.g., Doc. 140, p. 2). The FDIC consistently dismissed these concerns, asserting to both Plaintiff and this Court that it had addressed them. Still, we did not order the parties to proceed to trial immediately; rather, the FDIC agreed on its own initiative and accord to try the case on submitted evidence and briefs.[5] Even then we did not choose the dates for the trial submissions, those were made according to a "joint plan of work" which the FDIC helped draft and to which it voluntarily agreed. (Doc. 148).

The FDIC lost the case on the merits and now apparently regrets these choices. Unfortunately, this is not uncommon. Developments occur quickly, and parties, including large and

---

[4] For the record, we perceived no fault with the FDIC's trial submissions, and instead we found them to be learned and well-argued treatments of a multitude of complex legal issues and facts, spanning multiple areas of law and an extended period of time. We ruled against the FDIC, and its trial counsel did not present certain issues as comprehensively as its new counsel does here, perhaps perceiving them as novel and comparatively minor, and preferring to focus on victory on the merits. Regardless, the decisions which the FDIC now seeks to take back were and are, from our perspective, typical of the many difficult strategic decisions trial counsel must make in complex cases, some of which a losing party will, with the benefit of 20/20 hindsight, inevitably regret.

[5] Likewise, it specifically agreed in a conference call with Plaintiff and this Court, that also addressed many of the issues discussed above, that the only real issue remaining was the proper interpretation of Plaintiff's contracts, and that trial on that issue was appropriate at this time. (Doc. 143).

sophisticated ones, often make decisions of great import, or have such decisions made for them by agents they are not sufficiently monitoring, that they come to regret. Such is the nature of litigation, and life. We see no reason here why the FDIC – like every other litigant – should not be bound by its previous litigation strategy and decisions.

Finally, while it would be generally unfair if every unsuccessful litigant could retry his case until he achieved the result he desired, it would be especially unfair here, where Plaintiff – as we found at trial, in a finding that is not open for reconsideration – has a valid and straightforward claim on the merits. His claim should have been resolved at the moment of his termination, in 2002. Instead, without any basis in any of his contracts that we can perceive, his former employer(s) and their successor(s) have fought him at every turn. Plaintiff's litigation began almost a decade ago. He died in the meantime, and his estate continues to accrue delay and costs due, at least in part, to Defendant's litigation tactics. If the FDIC regrets the manner in which it chose to try the case, then it is a regret of its own making; Plaintiff no doubt regrets many of his choices as well. Both parties must now live with their decisions.

Accordingly, and for the reasons given above:

IT IS ORDERED that Defendant FDIC's plan of work, re: "Plan of Action," (Doc. 207) is REJECTED, and Plaintiff's plan (Doc. 206) – Items 1, 2, 3, and 4 – is ADOPTED.

Regarding the two options for Item 1, IT IS FURTHER ORDERED that the parties comply with the former version – that beginning "The FDIC-R shall file a third party complaint under Rule 14," and that the dates shall be 15 days later than those proposed in the plan. For clarity, the final sentence of this item, as ordered, therefore reads: "This third party complaint shall be filed by **July 31** and the FDIC-R shall have all third-party defendants served by **August 31, 2011**."

SIGNED on this 1st day of June 2011 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE