UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

BILLY W. TAYLOR                                CIVIL ACTION NO. 3:04-cv-0521

-vs-                                                          JUDGE DRELL

WASHINGTON MUTUAL INC.                   MAGISTRATE JUDGE KIRK

## RULING

Before the Court is a "Motion to Reassert and Supplement Motion to Set Reasonable Attorneys' Fees and Costs" (Doc. 242) filed by Plaintiff, Clyde E. Taylor, legal representative for the succession of Billy W. Taylor, following our November 1, 2012, amended ruling and judgment in favor of Plaintiff. For the following reasons, Plaintiff's motion will be **GRANTED** in the amount of a $412,785.47 fee award plus $14,427.74 in allowable costs.

### I.    Background

The underlying facts of this case have been discussed at length in multiple rulings issued by this Court. (See Docs. 104-1, 164). For brevity's sake, we adopt those factual statements here and supplement them with the following:

On July 17, 2006, Plaintiff filed a second amended complaint asserting the following claims against Defendants, Washington Mutual, Inc. ("WMI") and Washington Mutual Bank ("WMB") (collectively, "Washington Mutual"): (1) a severance payment claim under the Employee Retirement Income Security Act, 29 U.S.C. § 1000 *et seq.* ("ERISA"); (2) a claim for penalties for failure to provide

requested ERISA documentation under 29 U.S.C. § 1132(c)(1); (3) a breach of contract claim relating to Plaintiff's employment compensation agreement; (4) a claim for penalty wages under the Louisiana Wage Payment Act, La. R.S. § 23:632 ("LWPA"); (5) a claim for attorney's fees under the LWPA; and (6) a claim for attorney's fees and costs under ERISA, 29 U.S.C. § 1132(g). (Doc. 60). In a judgment signed on November 28, 2007, we granted Defendant's motion for summary judgment in part and dismissed Plaintiff's ERISA documentation claim. (Doc. 105). This summary judgment was based on a finding that Plaintiff's severance payment plan is a "top hat" plan under the ERISA regulations and therefore is exempt from the ERISA reporting and disclosure requirements. (Doc. 104).

In that same ruling and judgment, we granted Plaintiff's motion for summary judgment on the issue of liability for Plaintiff's breach of employment contract claim, but we denied the motion with respect to breach of contract damages, penalty wages and attorney's fees under the LWPA, and attorney's fees and costs under ERISA. (Docs. 104, 105). Subsequently, the parties settled the issue of breach of contract damages, and we incorporated their agreement into our original ruling dated January 12, 2011. (Doc. 164 at p. 5). Moreover, by accepting Defendants' offer of judgment, Plaintiff waived his LWPA penalty wage claim. (Doc. 163 at p. 21). The remaining claims were tried by the parties on stipulation.[1]

On September 25, 2008, the Office of Thrift Supervision declared WMB insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") as its Receiver. (Doc 125). The next day, September 26, 2008, Defendant WMI filed a

---

[1] The claims remaining for and argued at trial include the following: (1) a post-termination severance claim under ERISA; (2) a discretionary award of attorney's fees and costs under ERISA; and (3) a mandatory award of attorney's fees under the LWPA.

voluntary petition for bankruptcy. (Doc. 124). In connection with the FDIC's receivership, we stayed the case from February 2009 to January 2010 (Docs. 130, 141), and confirmed the FDIC's substitution for Defendant WMB (Doc. 134).

On January 12, 2011, we rendered an original ruling and judgment (Docs. 164, 165) (hereinafter, "Original Judgment") in favor of Plaintiff and against the FDIC on all remaining claims, including both attorneys' fee claims.[2] After considering the appropriate factors under Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980), and finding an award under ERISA's discretionary fee provision appropriate, we specifically held the FDIC is not immune from an award of fees and costs. Moreover, we determined that the ratable distribution exemption should not apply, given the circumstances surrounding this litigation. (Doc. 164).[3] Finally, we ordered counsel to submit calculations of the fees and costs incurred during the litigation, with supporting documentation, consistent with the Fifth Circuit's lodestar requirement.

Pursuant to this Court's order, Plaintiff filed a "Submission of Calculations for Award of Attorney's Fees and Costs; Alternatively, Motion for Award of Reasonable Attorney's Fees and Costs" (Doc. 175) (hereinafter, "Original Fee Application") on

---

[2] FN - discussing fee award in context of ERISA award b/c it includes costs and fees
[3] Specifically, we stated:

> The Fifth Circuit has ruled squarely that [the FDIC's exemption provision, 12 U.S.C. § 1825,] deals with taxation, not general penalties or fines, and in any case we are unconvinced that an attorney's fee award, when provided by statute, constitutes a "penalty" in the sense intended by that statute. See FDIC v. McFarland, 243 F.3d 876, 886 (5th Cir. 2001). Otherwise, prior Fifth Circuit precedent, the reality that the ongoing litigation over the [Umbrella] Trust does not necessarily indicate its or the ultimately responsible party's insolvency, and the possibility that the litigation could yield a collateral fund to pay this and other such claims convinces us that the ratable distribution exemption should likewise not apply. See FDIC v. Scott, 125 F.3d 254, 260 (5th Cir. 1997) (Doc. 163, p. 28) (discussing the ongoing litigation and possibility of a collateral fund).

(Doc. 164, p. 18–19).

February 24, 2011. Plaintiff's Original Fee Application totaled $383,717.26 in attorney's fees and costs, which accrued during the period from May 31, 2002, to February 15, 2011. (Doc. 175, Exh. 1A–1E).

On February 28, 2011, we rendered an amended ruling and judgment (Docs. 177, 178) (hereinafter, "Amended Judgment"), clarifying Plaintiff's award of pre-judgment interest in connection with his additional severance bonus. Thereafter, on March 16, 2011, we withdrew our Original and Amended judgments, and denied Plaintiff's Original Fee Application as premature. (Doc. 187).

Subsequently, on August 27, 2012, we denied Defendant FDIC's most recent motion to dismiss for lack of jurisdiction, and reinstated our Amended Judgment, signed on February 28, 2011, in favor of Plaintiff and against Defendant, FDIC. (Doc. 233) (hereinafter, "Reinstated Judgment"). Furthermore, on November 1, 2012, we amended our Reinstated Judgment, dated August 27, 2012, and rendered an amended ruling and amended judgment (Doc. 241) (hereinafter, "Second Amended Judgment") in favor of Plaintiff and against Defendant, FDIC, for the following sums:

(1)    $68,085.30, plus pre-judgment interest of $22,656.13, plus costs accrued, if any, as provided by law;

(2)    $1,268,981.00, plus pre-judgment interest and costs, if any, as provided by law; and

(3)    attorney's fees, in an amount to be calculated later through a separate motion.

Plaintiff then filed the present "Motion to Reassert and Supplement Motion to Set Reasonable Attorney's Fees and Costs" (Doc. 242) (hereinafter, "Supplemental Fee Application") on December 13, 2012, seeking attorney's fees and costs of $383,717.26, as set forth in his Original Fee Application (Doc. 175), plus an additional

4

$75,049.70 in fees and costs incurred since the previous motion, for a total of $458,766.96, with post-judgment interest from August 27, 2012. (Doc. 242-1).[4] The FDIC, has opposed Plaintiff's Supplemental Fee Application (Doc. 244), to which opposition Plaintiff has replied (Doc. 245).

Plaintiff's attorneys have submitted extensive documentation of the time expended in this case, the billing rates charged, and the disbursements made in support of Plaintiff's request for an award of attorney's fees and costs in the amount of $458,766.96. However, Defendant argues that the amount Plaintiff seeks must be significantly reduced for the following reasons: (1) Plaintiff seeks fees incurred in furtherance of unsuccessful and abandoned claims, which are not recoverable as a matter of law; (2) Plaintiff seeks fees incurred during the administrative process; (3) Plaintiff seeks fees for unreasonable, unsupported, or unjustified billed time; and (4) Plaintiff seeks non-compensable costs. (Doc. 244).

Having completed an analysis of the applicable law and upon request from counsel, we held a hearing on the two fee claims on July 9, 2015. We provided the essentials of our legal analysis of the claims and, based on that, required counsel to further discuss the claims and determine whether there was agreement on the amounts to be awarded. Counsel conferred and, in every instance, came to agreement on the amounts awardable. We have reviewed these agreed amounts and find them to be consistent with our analysis. However, this procedure was followed under the understanding that, by agreeing to amounts awarded, no party was

---

[4] Plaintiff retained new counsel from the law firm of Walter, Papillion, Thomas, Cullens, LLC in May 2011. Attached to Plaintiff's supplemental motion are the declarations and time sheets of Plaintiff's former counsel, Thomas H. Kiggans and the law firm of Phelps Dunbar LLP, and Plaintiff's current counsel, J.E. Cullens, Jr. (Doc. 242-2, Exh. A & A-1; Doc. 242-3, Exh. B & B-1).

thereby waiving any appellate rights to the awards (or absence of awards) made as a result of the Court's legal analysis and this Ruling.

## II.   Law and Analysis

The Fifth Circuit has explained the procedure for the calculation of reasonable attorney's fees as follows:

> [D]etermination of reasonable attorneys' fees involves a two-step procedure. See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983). Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Id. Then, the district court must multiply the reasonable hours by the reasonable hourly rates. Blum v. Stenson, 465 U.S. 886, 888, 104 S. Ct. 1541, 1544, 79 L. Ed. 2d 891 (1984) (defining base fee to be product of reasonable hours and reasonable rate); Hensley, 461 U.S. at 433, 103 S. Ct. at 1939 (defining product of hours reasonably expended and reasonable hourly rates as "the most useful starting point"); Brantley v. Surles, 804 F.2d 321, 325 (5th Cir. 1986) (stating hours multiplied by rate to be normal basis for fee). The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case. Brantley, 804 F.2d at 325. Determinations of hours and rates are questions of fact. See Bode v. United States, 919 F.2d 1044, 1047 (5th Cir. 1990) (reviewing hours for clear error).

La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 323–24 (5th Cir. 1995).

The lodestar calculation "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), and this estimate enjoys a strong presumption of reasonableness. Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 800 (5th Cir. 2006).[5] Accordingly, courts should not deviate from the lodestar unless a fee applicant proves an

---

[5] See also Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986) ("[T]he figure resulting from [the lodestar] calculation is more than a mere 'rough guess' or initial approximation of the final award to be made. . . . '[W]hen the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee' to which counsel is entitled.) (citations omitted).

enhancement is necessary to make the fee award reasonable. Watkins v. Fordice, 7

F.3d 453, 459 (5th Cir. 1992) (citing Blum v. Stenson, 465 U.S. 886, 897–98 (1984)).

"Adjustment of the lodestar in this circuit involves the assessment of a dozen

factors" set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.

1974), which include:

> (1) the time and labor required for the litigation; (2) the novelty and
> complication of the issues; (3) the skill required to properly litigate the
> issues; (4) whether the attorney had to refuse other work to litigate the
> case; (5) the attorney's customary fee; (6) whether the fee is fixed or
> contingent; (7) whether the client or case circumstances imposed any
> time constraints; (8) the amount involved and the results obtained; (9)
> the experience, reputation, and ability of the attorneys; (10) whether the
> case was "undesirable;" (11) the type of attorney-client relationship and
> whether that relationship was long-standing; and (12) awards made in
> similar cases. 488 F.2d at 717–19.

La. Power & Light Co., 50 F.3d at 329 n.19. While we must consider each of these

factors in turn, the Fifth Circuit has suggested that district courts give "special heed"

to the following Johnson criteria: (1) the time and labor required; (5) the customary

fee; (8) the amount involved and the results obtained; and (9) the experience,

reputation, and ability of counsel. Saizan, 448 F.3d at 800 (citing Migis v. Pearle

Vision, 135 F.3d 1041, 1047 (5th Cir. 1998) (citations omitted)). However, several

factors often are subsumed within the initial lodestar calculation, so courts must be

careful not to "double count" those criteria already considered. Id.

The Court must evaluate the reasonableness of the total hours claimed and

"whether the particular hours claimed were reasonably expended" on this litigation.

La. Power & Light Co., 50 F.3d at 324–25 (citations omitted). The burden is on the fee

applicant to prove the reasonableness of the hours claimed, "not on the opposing

party to prove their unreasonableness." Cardinal Servs., Inc. v. Omega Protein, Inc.,

No. 00-1909, 2007 WL 1343266, at *3 (W.D. La. May 7, 2007) (quoting Leroy v. City of Hous., 831 F.2d 576, 586 (5th Cir. 1987)). To satisfy this burden, the applicant must produce contemporaneous billing records documenting the appropriate hours expended and the hourly rates. La. Power & Light Co., 50 F.3d at 324. Furthermore, this documentation must be sufficiently detailed "so that the district court can fulfill its duty to examine the application for noncompensable hours." Bode v. United States, 919 F.2d 1044, 1047 (5th Cir. 1990). Accordingly, the billing records should describe both the specific task performed and the time spent on each task. Cardinal Servs., 2007 WL 1343266 at *3. The remedy for an applicant's submission of vague and incomplete documentation is exclusion or reduction of the hours claimed. Id. ("Courts may exclude hours that are insufficiently documented and should not award attorney's fees unless the prevailing party presents sufficiently detailed records that the time expended and the need for services are clearly established."); see also Leroy v. City of Hous., 906 F.2d 1068, 1080 (5th Cir. 1990) (eliminating hours as "not illuminating as to the subject matter" or "vague as to precisely what was done").

Here, Plaintiff has submitted detailed invoices and contemporaneous billing records with the date, the name of the individual providing services, the number of hours calculated in one-tenths of an hour, and a brief explanation of the services provided for each entry. However, the FDIC makes a number of objections to the reasonableness of these proposed hours.

## A. Reductions to Plaintiff's Fee Award

At the recent July 9th hearing, the parties jointly suggested organizing the various issues of contention in the same order as the FDIC's opposition memo (Doc. 244). For the sake of consistency and clarity, we will address the issues in the same order, which the FDIC arranged into the following four broad categories: (1) fees incurred in furtherance of unsuccessful and abandoned claims; (2) fees incurred during the pre-litigation administrative process; (3) fees sought for unreasonable, unsupported, or unjustified billed time; and (4) costs.

### 1. Fees incurred in furtherance of unsuccessful and abandoned claims

The FDIC suggests the number of hours claimed is unreasonable because Plaintiff seeks fees incurred in furtherance of unsuccessful claims. District courts have discretion to reduce an award of attorney's fees if the prevailing party has only partial success, rather than full success on all claims. Pruett v. Harris Cnty. Bail Bond Bd., 499 F.3d 403, 418 (5th Cir. 2007). In cases where the prevailing party has lost on some claims, a court can exercise "'equitable discretion' to 'arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff.'" Id. (quoting Tex. State Teachers Ass'n v. Gardland Indep. Sch. Dist., 489 U.S. 782, 789–90 (1989) (citing Hensley, 461 U.S. at 437)). However, when a plaintiff has asserted multiple, related claims and obtains substantial relief, the court should not reduce the fee award simply because the plaintiff did not prevail on each contention raised. Hensley, 461 U.S. at 440.

The United States Supreme Court announced a two-part test in <u>Hensley</u>: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" <u>Hensley</u>, 461 U.S. at 434.

The Fifth Circuit has articulated the correct standard for setting an appropriate fee award when a plaintiff achieves only partial success:

> Time spent pursuing unsuccessful claims that were clearly without merit should be excluded. However, the mere fact that the litigants did not succeed in obtaining a judgment on all of the claims asserted does not mean that time spent pursuing these claims should automatically be disallowed. Instead the court must consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution, if any, made to success by the investigation and prosecution of the entire case.

<u>Jones v. Diamond</u>, 636 F.2d 1364, 1382 (5th Cir. 1981) (en banc).

Based upon these rules, no deduction is appropriate. It would be virtually impossible to parse this billing to determine which moment in time should be deducted. The presentation of all claims at once was appropriate in this case. However, the fees incurred in furtherance of the Third Amended Complaint, which was neither filed nor prosecuted (and, thus, perhaps, might better be classified under the upcoming "unproductive tasks" heading), should be reduced.

We find that the fee award requested by Plaintiff should be reduced as follows:

(1) The $7,091.40 requested for fees incurred in furtherance of Plaintiff's unsuccessful "Plan Documents" claim shall not be reduced;

(2) The $677.50 requested for fees incurred in furtherance of Plaintiff's unsuccessful claim for penalty wages shall not be reduced;

(3) The $1,665.00 requested for fees incurred despite Plaintiff's failure to obtain a judgment against FDIC's co-defendant, WML, shall not be reduced; and

(4) The $5,075 requested for fees incurred for work on the Third Amended Complaint, which was neither filed nor prosecuted by Plaintiff, shall be reduced by $2,500.

### 2.  Fees incurred during the pre-litigation administrative process

FDIC challenges Plaintiff's request of attorney's fees and costs incurred during the pre-litigation administrative process. (Exh. C). We have not found, nor have the parties provided, any Fifth Circuit jurisprudence determining that attorney's fees incurred during the administrative process for ERISA claims are recoverable under ERISA's discretionary fee provision. However, other circuit courts addressing the issue have concluded that they are not recoverable.[6] Moreover, our colleagues in the Eastern and Western Districts of Louisiana have addressed this issue and have concluded that "attorney's fees incurred during the [ERISA] administrative process are not recoverable." Payne v. Hartford Life & Accident Ins. Co., No. 07-0232, 2008 WL 383384 (W.D. La. Aug. 14, 2008); see also Cavaretta v. Entergy Corp. Companies' Benefits Plus Long Term Disability Plan, No. 03-1830, 2005 WL 1038532 (E.D. La. April 29, 2005). We agree that they are **not** recoverable based upon these authorities.

---

[6] See, e.g., Cann v. Carpenters' Pension Trust Fund for N. Cal., 989 F.2d 313 (9th Cir. 1993); Anderson v. Proctor & Gamble Co., 220 F.3d 449 (6th Cir. 2000); Peterson v. Cont'l Cas. Co., 282 F.3d 112, 119–21 (2nd Cir. 2002); Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003); Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1010–11 (8th Cir. 2004); Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 313 (3rd Cir. 2008).

We find that the $6,460.25 requested by Plaintiff for fees incurred during the pre-litigation administrative process is not recoverable in its entirety. Accordingly, Plaintiff's fee award in this regard shall be reduced by $6,460.25.

### 3. Fees sought for unreasonable, unsupported, or unjustified billed time

The FDIC contends that Plaintiff seeks to recover fees for unreasonable billing in the following ways: (a) duplicative and excessive billing; (b) billing for unproductive tasks; (c) vague billing entries or inadequate descriptions; (d) block-billing; (e) billing for clerical or non-chargeable tasks; (f) billing for travel time; and (g) billing for unsupported or inexplicable time. We will address each issue in turn.

### a. Duplicative and Excessive Billing

The FDIC has identified four specific areas of alleged duplicative or excessive billing: (1) excessive interoffice and "ghost" conferences[7]; (2) excessive time spent on motion to set aside ERISA case order[8]; (3) duplicative hours for "team billing"[9]; and (4) duplicative billing by former and successive counsel for the same tasks.[10] The total amount sought by Plaintiff within these four categories challenged by the FDIC is $18,469.25. At the motion hearing on July 9, 2015, we informed the parties that we generally agreed Plaintiff's billing for interoffice and ghost conferences and the time spent on the aforementioned motion was somewhat excessive, but was not subject

---

[7] Tom Kiggans billed 26.50 hours for interoffice meetings, and 12.20 hours for ghost conferences; Karleen Green billed 22.50 hours for interoffice meetings, and 23.5o hours for ghost conferences; Betty Burke spent 13.30 hours for interoffice conferences and 7.30 hours for ghost conferences; Jess Coco spent 9.20 hours for interoffice conferences, 7.80 hours for ghost conferences.

[8] Research and drafting of motion from October 2005 to July 2006. 43.80 hours for a total of $11,709.00 in fees to prepare motion and memorandum in support, which is a mere 12 pages altogether.

[9] FDIC argues that even though Phelps removed entries for 17 of the 25 timekeepers, a reduction is nevertheless appropriate here because of the patently excessive "team" billing.

[10] FDIC also seeks to exclude a total of 13.7 hours and $3,266.00 in fees representing simultaneous charges by Plaintiff's former counsel, Phelps Dunbar, and Plaintiff's substitute counsel, Walters Papillion, for performance of the same tasks services.

to the 50% reduction requested by the FDIC. We also stated that, in accordance with prevailing precedent,[11] Plaintiff must deduct additional billing attributable to "team billing," especially in obvious cases such as an associate traveling to a hearing or meeting with a partner, but never presenting or meaningfully participating. Finally, we agreed with the FDIC that Plaintiff cannot recover duplicative billing by Plaintiff's new counsel. While the work may have been necessary for new counsel to become familiar with the file, the change in counsel was not FDIC's fault and they should not be subject to the resulting double billing. With that information, the attorneys conferred during a recess in the hearing and agreed that, based on our guidance and without waiving any rights to appeal, a reduction of $9,250 would be satisfactory to both sides. We find this reduction adequately comports with the Court's view of these issues.

### b. Billing for Unproductive Tasks

Work on unasserted claims and motions, unsuccessful claims and motions, and depositions that were not pursued are generally not recoverable. White v. Imperial Adjustment Corporation, 2005 WL 1578810 (E.D. La. 2005) (denying fees for work on unsuccessful claims and with regard to potential parties who never joined the lawsuit); see also Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Board, 919 F.2d 374 (5th Cir. 1990) (denying fees for time spent with potential parties who never joined the lawsuit).

The FDIC asks us to disallow time expended on the Judson Croom deposition, which the FDCI labels as "unproductive" or "unnecessary" for the pursuit of

---

[11] See, e.g., Riley v. City of Jackson, 99 F.3d 757, 760 (5th Cir. 1996).

Plaintiff's claims because the deposition was never taken. Plaintiff has produced no evidence or argument in briefing or at oral argument as to why it is entitled to fees for this apparently unproductive work. Because we have no evidence that this deposition every took place or was necessary, we agree that Plaintiff's fee award must be reduced by the amount attributed to work on these unproductive tasks.

### c. Vague Billing Entries or Inadequate descriptions

The FDIC contends that several of Plaintiff's time entries suffer from vagueness, making it difficult for this Court to determine the tasks performed, the claims to which they relate, and whether they were necessary for this litigation. (Doc. 244 at 20; Doc. 244-7).[12] As noted above, district courts may properly strike hours when the supporting records are "too vague to permit meaningful review." La. Power & Light Co., 50 F.3d at 326. Nevertheless, the Fifth Circuit "has not precisely defined the appropriate standard" for making this determination. Id. Moreover, both the Fifth Circuit and this Court have recognized that "attorneys cannot be required to spend all their time laboring over time descriptions."[13] Accordingly, district courts have considerable leeway to assess the sufficiency of the documentation and to "accept or reject fee applications similar to that submitted by" Plaintiff. Id. at 327–28

---

[12] The FDIC-R seeks the elimination of 1.9 hours based on vagueness of the corresponding entries and insufficient evidence that the task was performed for the present case: (1) B. Burke's entry on 3/22/05 of 0.60 hours for "Review of Code of Civil Procedure and annotations to determine procedure and delays for jury trial demands;" (2) K. Green's entry on 6/8/05 of 0.40 hours for "Office conference with Tome [sic] Kiggans and Bowen McRae regarding case strategy;" (3) E. Aycock on 9/19/07 of 0.40 hours for "Research and analysis of caselaw [sic];" and (4) E. Aycock on 1/30/08 of 0.50 hours for "Review of attendance report with attention to the number of employees recorded." (Doc. 244-7, Exh. G).

[13] Conner v. Mid South Ins. Agency, Inc., 943 F. Supp. 663, 666 (W.D. La. 1996) (citing La. Power & Light Co., 50 F.3d at 327) ("[E]ntries may border on inadequacy as a matter of law, but we are mindful that practical considerations of the daily practice of law in this day and age preclude "writing a book" to describe in excruciating detail the professional services rendered for each hour or fraction of an hour. We also recognize that, in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry.").

(alterations in original). The FDIC seeks a reduction of $299.50 for entries it deems vague. We agree that this is an appropriate reduction.

### d. Block-billing

The FDIC has pointed out, and we have discovered, multiple entries that consolidate several tasks into a single block of time.[14] For example, the fee entries show T. Kiggans spent 9.50 hours "[preparing] for and attend[ing] settlement conference with the Magistrate Judge and travel[ing] to and from Alexandria for same" on June 26, 2008. (Doc. 173-1, Exh. 1-A, p. 116). Moreover, on September 23, 2008, K. Green spent .40 hours on the following tasks: "Receipt and review of Notice of Deposition of Shelley Risley; drafting correspondence to Judsom Croom regarding deposition." (p. 125). Similarly, on February 10, 2011, M. Jennings spent 2.20 hours on the following: "Work on declarations in support of fee submission, including finalizing revisions to declarations of Betty Uzee and Jess Coco; e-mails to/from Betty Uzee and Jess Coco re same; revisions to declaration of Karleen Green; e-mails to/from Karleen Green re same, re current standard hourly rate; work on revisions to declaration of Tom Kiggans."

While we generally disfavor the practice of block-billing, this Court has refused to eliminate hours requested where the firm representing an applicant "consolidated all time billed for any one day into a total, with an accompanying notation listing all the activities done in one day." Conner, 943 F. Supp. at 666. As we stated in Conner, "this is an area where we must walk a fine line between the need [to] make a meaningful review of the billing information and excessive stinginess."

---

[14] The FDIC-R challenges 17.90 hours based on block-billed time entries.

Id. There, we acknowledged the difficulty of evaluating the time spent on individual tasks, but we nevertheless found the daily totals reasonable. Id. We likewise find no offensive blockbilling in the submissions and reject the FDIC's argument in this area.

### e. Billing for Clerical or Non-chargeable Tasks

The FDIC challenges several entries reflecting clerical work performed by attorneys and paralegals, citing Fifth Circuit jurisprudence holding that such work is not recoverable at the attorney's or paralegal's standard legal rate. We agree that the billings listed on Exhibits I and I-1 to the FDIC's memo (Doc. 244), such as organizing files, making bank deposits, and preparing fee bills are non-recoverable clerical tasks. Plaintiff's fee award will be reduced by the full $1,333.50 requested by the FDIC.

### f. Billing for Travel Time

The FDIC contends that standard practice in our Circuit is to compensate attorneys' travel time at 50% of the hourly rate. Indeed, the Fifth Circuit has upheld a district court's exercise of discretion discounting the hourly rate billed for an attorney's travel time by one-half. Watkins, 7 F.3d at 459. However, the Fifth Circuit also recognized the lack of consensus regarding the billing of non-working travel time and emphasized the broad discretion of district courts in awarding attorney's fees. In re Babcock & Wilcox Co., 526 F.3d 824, 828 (5th Cir. 2008). (ultimately finding no abuse of discretion in bankruptcy court's one-half reduction of attorney's fees associated with travel time).

According to Seventh Circuit jurisprudence cited in Babcock, reasonable attorney's fees generally include "reasonable travel time billed at the same hourly

rate as the lawyer's normal working time" because an attorney's travel time on behalf of one client represents "an opportunity cost that is equal to the fee he would've have charged that or another client if he had not been traveling." Henry v. Webermeier, 738 F.2d 188, 194 (7th Cir. 1984).

Subscribing to Abraham Lincoln's view (set forth below), just because an attorney travels of **necessity** does not justify the reduction of his or her billing time by one-half. We thus agree with the view of Henry and do not reduce this billing for that cause.

### g. Billing for Unsupported or Inexplicable Time

The FDIC argues for the exclusion of 76.80 hours representing $18,687.00 in fees for what it terms "ghost conferences," or inter-office meetings for which there is a time entry for one participant but no corresponding entry for the other alleged participants. (Doc. 244 at pp. 17–18; Doc. 244-13, Exh. K; Doc. 244-14, Exh. K-1). According to the FDIC, the only way for Plaintiff's attorneys to verify that such meetings occurred is through a time entry by all meeting participants. Without such evidence, Plaintiff's attorneys have failed to meet their burden of proof with respect to these entries and therefore should not be reimbursed for this time. However, from our own experience, we know that general billing requirements for most clients indicate an unwillingness to pay for two attorneys doing the same thing. In such situations, then, billing for only one attorney is appropriate.

Yet, we are well aware of the problem/issue of interoffice billing, as the undersigned practiced law for 32 years before taking the bench. Abraham Lincoln once said, "A lawyer's time and advice are his stock in trade." While that is true,

modern billing practices and time keeping computer software have made the billing of time more interesting, with the reliable capture of time being now almost an occupational hazard. The problem with "office conferences" is that often a casual mention of a case or the mere quick answer to a question will result in a billable time entry, even when nothing of moment was really accomplished. The point is that mention of "office conferences" billing entries often leads to abuse.

In this case, it appears to the undersigned that the number of these is excessive, considering that the facts and law in this case are far more cerebral than dynamic. In other words, this case was much more about research and brief writing than about planning trial strategy, which, in our view, might have warranted frequent and substantive "office conferences." We agree with the nonbinding suggestion of counsel for the Plaintiff and the FDIC at the hearing on July 9, 2015, that a $9,500 reduction of the fee award adequately addresses our concern about the excessive nature of office conferences in this case.

### h. Total Reductions

We find that the fee award requested by Plaintiff should be reduced as follows:

> (1) The $18,469.25 requested by Plaintiff challenged by FDIC as duplicative and excessive shall be reduced by $9,250;
>
> (2) The $2,210.50 requested by Plaintiff challenged by FDIC as time spent on unproductive or unnecessary tasks shall be reduced by $2,210.50;
>
> (3) The $299.50 requested by Plaintiff challenged by FDIC as time not supported by an adequate description shall be reduced by $299.50;

(4) The $2,321.75 requested by Plaintiff challenged by FDIC as inappropriate block-billing shall not be reduced;

(5) The $1,333.50 requested by Plaintiff challenged by FDIC as non-chargeable time shall be reduced by $1,333.50;

(6) The $5,264 requested by Plaintiff for travel time challenged by FDIC shall not be reduced; and

(7) The $18,687 requested by Plaintiff challenged by FDIC as unsupported and inexplicable shall be reduced by $9,500.

### 4. Costs

Finally, the FDIC challenges the reasonableness of Plaintiff's costs, arguing that of the $14,427.74 in costs sought by Plaintiff, $12,814.72 are non-compensable and should be disallowed. Among the costs Defendant seeks to exclude are charges for postage, Westlaw use, long distance telephone calls, and travel expenses. (Doc. 244-15, Exh. L).

In reviewing the claimed expenses, nothing has come to our attention showing that they were unrelated to this litigation. FDIC's objections are not well taken, and the claimed expenses are appropriate and allowed. See, e.g., Assoc. Builders & Contractors of La. v. Orleans Parish Sch. Bd., 919 F.2d 374, 380 (5th Cir. 1990).

### B. Reasonableness of Hourly Rate

After determining the number of hours reasonably expended on the litigation, we must then fix a reasonable hourly rate. In the instant case, Plaintiff's attorneys have submitted affidavits of their customary billing rates, as well as an affidavit from

F.A. Little, a practicing attorney in the Alexandria community (and former U.S. District Judge), in which he attests that the rates of Plaintiff's attorneys are within the range of current prevailing rates in the local community. The FDIC has introduced no contradictory affidavits or other evidence in response.

According to the Supreme Court, "[a] reasonable attorney's fee is one calculated on the basis of rates and practices in the prevailing relevant market, i.e., 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Missouri v. Jenkins, 491 U.S. 274, 285 (1989) (citations omitted). If an attorney's standard rate is within the range of prevailing market rates for attorneys with equivalent skill and experience, a court must articulate its reasons for choosing a different rate. Islamic Ctr. of Miss. v. Starkville, 876 F.2d 465, 469 (5th Cir. 1989). We find the rate billed to be reasonable under these circumstances.

### C. Adjustment of the Lodestar

Having determined the lodestar, we are now permitted to adjust that figure upward or downward depending on our assessment of the twelve Johnson factors indicated above. However, to the extent any factors were subsumed in the lodestar analysis, we cannot reconsider them here. Saizan, 448 F.3d at 800. (The lodestar may not be adjusted due to a Johnson factor . . . if the creation of the lodestar amount already took that factor into account."). We have carefully analyzed the Johnson factors in turn and conclude that they do not warrant a departure from the lodestar in this case. Given our thorough consideration of these criteria in calculating the lodestar, we do not repeat that analysis here.

We have **not** adjusted the basic lodestar in this case, having accepted the stated hourly rate as generally reasonable. However, percentage adjustments are necessary here. As detailed already in this Ruling, we have reduced Plaintiff's request for $458,766.96 by $31,553.75 or 6.88%.

## III. Conclusion

As stated in this Ruling, the "Motion to Reassert and Supplement Motion to Set Reasonable Attorneys' Fees and Costs" (Doc. 242) filed by Plaintiff, Clyde E. Taylor, following our November 1, 2012 amended ruling and judgment in favor of Plaintiff Clyde E. Taylor, legal representative for the succession of Billy Taylor, and against the FDIC will be **GRANTED**, and, pursuant to a separate judgment, will be entitled to a $412,785.47 fee award plus $14,427.74 in allowable costs and legal interest from August 27, 2012 until paid in full.

SIGNED on this 24th day of August, 2015 at Alexandria, Louisiana.


DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT